IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JEWISH FAMILY & CHILDREN'S SERVICE, INC., an Arizona Non-Profit Corporation,<br><br>Plaintiff,<br><br>v.<br><br>LIGHTBEAM HEALTH SOLUTIONS, INC., a Delaware Corporation,<br><br>Defendant. | Case No. 3:20-cv-1147 |

## COMPLAINT

TO THE HONORABLE COURT:

Plaintiff Jewish Family & Children's Service, Inc. ("JFCS") respectfully pleads as follows:

### The Parties

1. JFCS is an Arizona Non-Profit Corporation that delivers behavioral health, substance use disorder and social services to families and children throughout Maricopa County, Arizona and adjacent areas. It supplies counseling for domestic violence victims, substance abuse counseling, recovery services, and geriatric services to older adults. In total, JFCS provides behavioral health and related services to more children in Arizona than any other behavioral health care provider.

2. Lightbeam Health Solutions, Inc. ("Lightbeam") is a Delaware corporation doing business in Texas. It is in the business of supplying data analytics for patient population management to behavioral health care providers. Lightbeam may be served with process

through its Registered Agent, CT Corporation System, 1999 Bryan Street, Ste. 900, Dallas, Texas.

3. Lightbeam markets itself as the leader in an industry that gathers and consumes clinical patient data and patient claims data through interfacing with third-party data systems. Lightbeam holds itself out to the public as the supplier of a comprehensive population management system for behavioral health providers to manage the care for children and families with behavioral health care needs.

## Jurisdiction & Venue

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332. A complete diversity of citizenship exists, and the amount in controversy exceeds $75,000.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in the Northern District of Texas.

## General Allegations

6. The behavioral health environment involves a provider of services acquiring payor contracts that are performance based. The expectation for payors and providers is that quality behavioral health and related services must be supplied to the patient at lower costs. To accomplish this goal, JFCS needs accurate data analytics to manage its patient population. Sources for clinical data include electronic medical records ("NextGen") and claims data from JFCS's primary payor at the time of contracting, Mercy Maricopa Integrated Care ("MMIC"). The aggregation of patients' clinical and claims data identifies quality care gaps for various patient groups and reduces unnecessary costs and utilization of services. This information must be made available in real-time to the JFCS clinicians at each clinic location.

7. Lightbeam represented to JFCS that it was capable of supplying JFCS with the data analytics that JFCS needed to exercise management over its patient population and that the data would be available to JFCS clinicians on a real-time basis.

8. In February 2018, Lightbeam met with JFCS personnel. At that time, JFCS informed Lightbeam of the goals, strategies and initiatives that JFCS was pursuing to perform population management and coordination of care, as well as its need to achieve value-based performance to acquire contracts from health care insurers.

9. In February and March 2018, Lightbeam represented to JFCS that Lightbeam's hardware platform and software systems had the capability to access, interface and consume clinical data from NextGen, JFCS's electronic medical records vendor.

10. Physical and behavioral health care are being integrated nationwide. The interoperability of electronic medical records is being implemented on a national basis, and health care insurers—including Medicare and Medicaid—are changing from pay-for-service contracts to value-based performance contracts. Coordination of patient care is critical to performance based contracts and dependent upon the receipt of accurate data available in real-time to the clinician.

11. Lightbeam expressly represented to JFCS that it was integrated and that its hardware platform and software systems were interfaced with the NextGen platform. Critically, however, Lightbeam did not disclose to JFCS that Lightbeam's connection to NextGen could not interact with the behavioral health component that is fundamental to JFCS patients receiving behavioral health services.

12. JFCS patients' clinical data for is supplied to the Health Information Exchange ("HIE") Health Current. Lightbeam represented to JFCS that it had the capability to interface

with Health Current data and combine that data with the claims data that Lightbeam acquires through MMIC. Lightbeam further represented that its hardware platform and software systems had the capability of consuming this data from multiple sources to supply the analytics necessary to export the data in real-time to JFCS clinicians located at JFCS clinics.

13. In March 2018, Lightbeam made it known to JFCS that Lightbeam was eager to enter a contract with JFCS before March 31, 2018, the end of the First Quarter. To entice JFCS to execute a contract with Lightbeam before that date, Lightbeam offered JFCS monthly discounts for services rendered plus an upfront discount. In fact, Lightbeam stated that "[i]t would be a favor to us" to finalize the contract before the end of the First Quarter.

14. JFCS informed Lightbeam of its needs for accurate analytics and population management, and Lightbeam represented to JFCS that it could meet those needs. Lightbeam owed a duty of reasonable care in supplying information to JFCS relating to Lightbeam's ability to meet JFCS's needs. Lightbeam breached that duty.

15. It made express representations to JFCS, claiming that Lightbeam's hardware platform and software systems were successfully serving the needs of accountable care organizations and hospitals in other parts of the country. However, Lightbeam did not explain to JFCS that it had built its infrastructure on a medical-physical health model platform rather than a behavioral health model platform. Moreover, Lightbeam did not inform JFCS that its services relied on Lightbeam's ability to pull data from NPI numbers relating to medical services, not behavioral health services. That distinction would have been significant to JFCS because in the behavioral health service community, the NPI number is of limited use to JFCS.

16. Unfortunately, after JFCS and Lightbeam entered a contract, Lightbeam's implementation of its services revealed that it lacked the capability to perform the services that

it had agreed to provide to JFCS. Simply put, its medical care product did not function for behavioral health care.

17. By September 2018, Lightbeam had admitted to JFCS that it was unable to satisfy the promises and obligations contained in the parties' contract. Sadly, to entice JFCS to enter the parties' contract, Lightbeam had misrepresented its ability to interface with behavioral health software systems and acquire claims data and patient data for JFCS's real-time use and population management.

18. Lightbeam admitted to JFCS that its product was not designed for behavioral health clinical services, and it acknowledged that it could not retrieve behavioral health claims data from JFCS payors.

19. Similarly, JFCS's coordination of patient care is a component of population management that substantially reduces the overall cost of patient care. Before the parties entered their contract, Lightbeam represented to JFCS that its platform and product would identify gaps in care coordination and notify the clinicians at JFCS's clinics of those gaps in real time. With that data, JFCS would have been equipped to meet the standards of performance (such as reducing unnecessary costs of patient care) necessary for it to acquire value-based contracts.

20. Regrettably, by the summer of 2019, Lightbeam could not retrieve the data necessary for JFCS to establish quality measures and accurate analytics. Simultaneously, JFCS was paying Lightbeam significant amounts of money each month and receiving nothing of value in return.

21. Consequently, by letter dated August 23, 2019, JFCS notified Lightbeam of Lightbeam's material breaches of the parties' contract and informed Lightbeam that its

contractual cure period was underway. JFCS cautioned that if Lightbeam were unable to resolve the material breaches in a timely manner, JFCS would terminate the contract between the parties.

22. The material breaches identified in that letter also put Lightbeam on notice of the pre-contractual misrepresentations of fact that Lightbeam had made to entice JFCS to sign the agreement. For its part, JFCS pre-contractually informed Lightbeam of its goals and its needs to engage in population management. It pre-contractually informed Lightbeam that Lightbeam's ability to provide products and services that would enable JFCS to meet those goals and needs were the fundamental reasons it would be willing to enter the contract.

23. Additionally, before the parties entered the contract, JFCS told Lightbeam that JFCS needed to meet value-based performance standards to acquire payor contracts to deliver services to patients. It informed Lightbeam that JFCS's population management needs included care coordination of JFCS patients and the ability to identify care gaps to prompt clinical providers to respond and address those gaps in real-time. Lightbeam represented to JFCS that it could deliver products and services that would enable JFCS to meet, respond to, and address those needs.

24. In reality, however, Lightbeam could not deliver products and services that would enable JFCS to meet, respond to, and address those needs, and it knew that it was unable to deliver those products and services to JFCS even as it represented to JFCS that it was able to do so.

25. Lightbeam also knew that it could not deliver real-time data to JFCS, even as it represented to JFCS that it could do so.

4824-0694-2394 v6 [69363-15]

26. To make matters worse, before it executed the contract, JFCS informed Lightbeam of the goals that it would be relying on Lightbeam's services to satisfy, and Lightbeam represented to JFCS that it was able to provide the services that JFCS needed to meet those goals. Unfortunately, after the parties executed their contract, JFCS did not meet those goals because Lightbeam lacked the capacity to deliver the services that it had represented to JFCS while enticing JFCS into entering the contract.

27. After JFCS and Lightbeam executed their contract, it became clear to JFCS that Lightbeam had not spent the money necessary for it to develop those capabilities, and it became apparent that Lightbeam knew (and had known since before the parties signed their contract) that it had not spent the money necessary for it to develop those capabilities and that it had never had any intention to do so.

28. Lightbeam portrayed its product to JFCS as a population health management system that was integrated with NextGen. That representation was false when Lightbeam made it, and Lightbeam knew it was false when it made the representation. In reality, Lightbeam's product could not retrieve clinical behavioral health patient data, and it could not retrieve patient claims data to achieve real-time analytics for JFCS clinicians.

29. JFCS's August 23, 2019 notice of material breach did not prompt a timely response from Lightbeam. Accordingly, JFCS terminated the contract and triggered the transition obligations present in the parties' contract.

30. JFCS named its transition person in a letter to Lightbeam dated September 25, 2019, and JFCS demanded that Lightbeam return all fees that JFCS had paid Lightbeam. In that letter, JFCS also informed Lightbeam that its misrepresentations of material facts and its omissions of material facts during the parties' pre-contractual communications had caused

substantial damage to JFCS.

31. Lightbeam's failure to satisfy its material contractual obligations to JFCS is a performance-based deficiency *ab initio*. Lightbeam knew of JFCS's needs for accurate analytics for population management and care coordination, and Lightbeam had a duty of reasonable care to supply accurate information regarding its actual ability to provide services that would (or would not) enable JFCS to meet its goals and obligations to achieve value-based care for patients.

32. Regrettably, during the sales process, Lightbeam misrepresented material facts concerning the capabilities of its products and services to induce JFCS to enter and execute the contract. Lightbeam knew that its misrepresentations and omissions of material facts would, if known by JFCS, preclude JFCS from contracting with Lightbeam.

33. But disregarding the truth, Lightbeam misrepresented or omitted honest representations regarding the actual capabilities of its systems, products, and services. Those misrepresentations and omissions of material facts harmed JFCS's ability to deliver quality health care to some of Arizona's most vulnerable citizens.

## Count One
### (Negligent Misrepresentation)

34. JFCS incorporates all of the allegations contained in the preceding paragraphs as though fully set forth herein.

35. Lightbeam provided false information to JFCS regarding Lightbeam's services before the parties entered a contract. Lightbeam knew the services that JFCS needed in order to deliver value-based services to Arizona children and families. Lightbeam also knew that it had led JFCS to believe that if JFCS entered a contract with Lightbeam, then it would provide

services that would enable JFCS to develop accurate data analytics and meet value-based obligations and standards of performance, which in turn would lead to JFCS's obtaining of additional payor contracts to deliver behavioral health services.

36. Lightbeam owed JFCS a duty of reasonable care as it supplied JFCS with information describing its system's capabilities. It breached that duty by providing JFCS with inaccurate information concerning the capabilities of Lightbeam's systems and on which it was asking JFCS to rely in connection with JFCS's patient care and population management. Additionally, Lightbeam failed to disclose critical material facts to JFCS. If Lightbeam had disclosed those critical material facts to JFCS, then JFCS would not have entered a contract with Lightbeam.

37. In connection with its decision to enter the contract with Lightbeam, JFCS justifiably relied on the inaccurate and incomplete information that Lightbeam had supplied to it.

38. As a result of Lightbeam's misrepresentations, JFCS incurred substantial economic damages. Had JFCS known that Lightbeam was incapable of performing its obligations under the contract, JFCS would not have contracted with Lightbeam. Lightbeam's representation that it was fully integrated with NextGen was inaccurate. Lightbeam was not integrated with NextGen's behavioral health database.

39. JFCS is entitled to an award of all the damages caused by Lightbeam to JFCS, plus prejudgment interest on the liquidated amounts.

## Count Two
### (Fraud in the Inducement)

40.     JFCS incorporates all of the allegations contained in the preceding paragraphs as though fully set forth herein.

41.     Under the legal claim of fraud in the inducement, Lightbeam is liable for all of the economic damages that it caused JFCS.

42.     Lightbeam knowingly and intentionally represented to JFCS that its systems had capabilities and attributes that they did not have.  Lightbeam also knowingly and intentionally omitted accurate material facts in its pre-contractual communications with JFCS.  Lightbeam made those misrepresentations and omissions for the express purpose of inducing JFCS to enter the contract between the parties.

43.     JFCS's willingness to contract with Lightbeam induced by Lightbeam's material misrepresentations and omissions of fact.  Before and after JFCS entered the contract with Lightbeam, Lightbeam deceived it regarding the scope, capabilities and functionality of its systems and services.

44.     Lightbeam deceived JFCS before the parties entered the contract by claiming its operational system was ready to meet the needs that JFCS had expressed to Lightbeam.  Shamefully, Lightbeam knew or chose to ignore the fact that it did not have the capability, functionality or software to meet JFCS's needs for the value-based delivery of behavioral health, substance use disorder, and children's services.  Instead, Lightbeam allowed its financially motivated desire to enter a contract with JFCS in the First Quarter of 2018 to override its obligation to tell JFCS the truth about its system's capabilities.

45. By letter dated September 25, 2019, after the Contract had terminated, JFCS further explained the basis of its claim that Lightbeam had fraudulently induced JFCS to contract with Lightbeam for services Lightbeam was knowingly unable to provide. In that letter, JFCS also demanded the return of the money it had paid to Lightbeam.

46. Lightbeam's inability to meet the contract's specifications from the beginning demonstrates that the representations it used to induce JFCS into entering the contract were fraudulent. Lightbeam knew that it did not have the capability, experience, or expertise to meet JFCS's needs, yet it still represented inaccurately to JFCS that it was connected to NextGen's electronic health records and that it was able to generate real-time data for use by JFCS clinicians.

47. JFCS justifiably relied on Lightbeam's misrepresentations of fact and omissions of material facts when it entered the contract with Lightbeam in March 2018.

48. Lightbeam's fraudulent misrepresentations and material omissions of fact caused substantial damages to JFCS.

49. Lightbeam's fraudulent misrepresentations and material omissions of fact caused JFCS substantial damages in terms of lost revenue and lost opportunity to contract with other entities to achieve a quality, sustainable population health driven model in behavioral health and substance use disorder services. Because of the way in which Lightbeam fraudulently induced JFCS into entering the contract, it is void *ab initio,* and, accordingly, any contractual limitation of liability for damages is void and of no effect. JFCS is entitled to full compensation for all damages caused by Lightbeam's deception and fraudulent inducement.

## Count Three
**(Material Breach of Contract)**

50. JFCS incorporates all of the allegations contained in the preceding paragraphs as though fully set forth herein.

51. JFCS and Lightbeam entered an enforceable contract.

52. JFCS fulfilled its duties and obligations contained within that contract.

53. Lightbeam breached that contract and its promises contained therein.

54. As a direct and proximate result of Lightbeam's breach of the Contract, JFCS has sustained significant damages including but not limited to the loss of the dollars that JFCS paid to Lightbeam for Lightbeam's services under the contract, plus damages for JFCS's lost opportunities in advancing its analytics to conduct population management, JFCS's attorneys' fees, costs and expenses, and for the prejudgment interest on the amount paid to Lightbeam and demanded by JFCS in its letter dated September 25, 2019.  The debt owed by Lightbeam to JFCS is liquidated, due, and payable.  Accordingly, JFCS is entitled to prejudgment interest thereon until paid.

## Count Four
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

55. JFCS incorporates all of the allegations contained in the preceding paragraphs as though fully set forth herein.

56. At the time the parties executed their contract, Lightbeam's motives for entering the contract were based on false representations and its financially motivated desire to enter the contract in the First Quarter of 2018.  Lightbeam expected JFCS to pay for services required under the contract even though Lightbeam's systems were unable to perform those services.

The acts and omissions alleged in this Complaint constitute acts that breach Lightbeam's implied obligations owed to JFCS, including the implied covenant of good faith and fair dealing. Lightbeam knew it did not have the capability to connect with clinical behavioral health data. It also knew that it had not spent and would not spend sufficient resources to perform its obligations under the contract, including its obligations to connect with claims data related to JFCS patients and to develop or allow JFCS to develop accurate analytics for population management.

57. Nonetheless, Lightbeam continued through the term of the contract to invoice JFCS and accept payment from JFCS for services that were either useless to JFCS or not delivered by Lightbeam. Lightbeam acted with deliberate disregard for the potential harm it knew JFCS would incur based on Lightbeam's false representations and material omissions of fact.

58. Lightbeam owed JFCS a duty of good faith and fair dealing with respect to its performance and represented capabilities as represented and under the terms of the parties' contract.

59. Lightbeam prevented JFCS from receiving the contractual benefits contemplated by JFCS at the time the parties executed the contract.

60. As a direct and proximate result of Lightbeam's breach of contract and Lightbeam's failure to comply with its duty of good faith and fair dealing, JFCS has been damaged significantly, including in the amount of all funds that it paid to Lightbeam, plus damages for JFCS's lost opportunities in advancing its analytics to conduct population management, JFCS's attorneys' fees, costs and expenses, and for the prejudgment interest on the amount paid to Lightbeam and demanded by JFCS in its letter dated September 25, 2019.

4824-0694-2394 v6 [69363-15]

The debt owed by Lightbeam to JFCS is liquidated, due, and payable. Accordingly, JFCS is entitled to prejudgment interest thereon until paid.

## PRAYER FOR RELIEF

WHEREFORE, JFCS respectfully requests the Court to issue judgment in its favor and against Lightbeam as follows:

1. Award JFCS all of its damages incurred in this matter and caused by Lightbeam;

2. Award JFCS all of the funds it paid to Lightbeam under the parties' contract, plus prejudgment interest thereon until paid;

3. Award JFCS consequential and related damages for Lightbeam's material breach of contract;

4. Award JFCS consequential and related damages incurred for the negligent misrepresentation of facts and material omissions of facts alleged herein;

5. Award JFCS all of its reasonable and necessary attorneys' fees incurred pursuing this action, plus its costs and expenses;

6. Award post-judgment interest to JFCS in the amount allowed by law; and

7. Such other and further relief as the Courts deems equitable and proper.

4824-0694-2394 v6 [69363-15]

Respectfully submitted,

**DICKINSON WRIGHT PLLC**

By: _____
**John R. Nelson**
Texas Bar No. 00797144
607 W. 3rd Street, Suite 2500
Austin, Texas 78701
Phone: (512) 770-4200
Fax: (844) 670-6009
jnelson@dickinsonwright.com

**ATTORNEYS FOR PLAINTIFF**

15